UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MELISSA RIZIO<br>*Parent and Next Friend*<br>*of D.R., a minor*, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>DISTRICT OF COLUMBIA,<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 21-0597 (ABJ)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiffs Melissa Rizio, as parent and next friend of D.R., a minor, and D.R. initiated an administrative action in the District of Columbia Office of the State Superintendent of Education Office of Dispute Resolution, Compl. [Dkt. # 1] ¶ 5, seeking a finding that the District had denied D.R. a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA") and an award of compensatory education services. Compl. ¶¶ 1, 49. The Hearing Officer assigned to the action found that D.R. was generally entitled to an offer of a FAPE, but he also found that plaintiff had taken "repeated action to home school Student and seek acknowledgement of same from OSSE for each school year." *See* Administrative Record [Dkt. # 6] ("AR 1") at 21.[1] As a result, the Hearing Officer determined that the District was relieved of its obligations to make an explicit offer of a FAPE or to conduct a triennial evaluation of D.R.

---

1　There are multiple page numbers on each page of the administrative record. For consistency's sake, the Court will utilize the page numbers of the PDF itself. The Hearing Officer's decision begins on page nine.

1

because "there is no obligation . . . when a parent is not seeking an offer of FAPE from the LEA." *Id.* at 23.

Plaintiffs now challenge the Hearing Officer's decision in this Court. They argue that "[d]efendant was obligated to make D.R. an offer of FAPE for the 2018-2019 school-year, by offering him a proposed IEP and placement," and they have moved for summary judgment in their favor. Pls.' Mot. for Summ. J. [Dkt. # 14] ("Pls.' Mot.") at 9. Defendant has also moved for summary judgment, asking this Court to uphold the ultimate determination but arguing that the Hearing Officer erred in finding that a home schooled student was eligible for an offer of FAPE at all. *See* Def.'s Mem. of P. & A. in Supp. of its Opp. to Pls.' Mot. and Cross Mot. for Summ. J. [Dkt. # 17] ("Def.'s Mot.") at 9 ("home schooled students are not entitled to the LEA's offer or responsibility for FAPE"). The motions are now fully briefed. *See also* Pls.' Mem. of P. & A. in Reply to Def.'s Mot [Dkt. # 19] ("Pls.' Reply); Def.'s Reply to Pls.' Reply [Dkt. # 20] ("Def.'s Reply"). For the following reasons, plaintiffs' motion will be **GRANTED** and defendant's motion will be **DENIED**.

## FACTUAL BACKGROUND

Plaintiff D.R. is a minor child who is a resident of the District of Columbia. Compl. ¶¶ 7–8. The parties agree that he has historically been eligible for special education services pursuant to the IDEA. *See generally Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) ("Under the Individuals with Disabilities Education Act (known as 'IDEA'), states and territories, including the District of Columbia, that receive federal educational assistance must establish 'policies and procedures to ensure,' among other things, that 'free appropriate public education,' or 'FAPE,' is available to disabled children."), citing 20 U.S.C. § 1412(a)(1)(A).

D.R.'s disability classification has been "Other Health Impairment" ("OHI") due to his Attention Deficit Hyperactivity Disorder ("ADHD"). AR 1 at 10.[2] D.R.'s last Individualized Education Plan ("IEP") was developed on June 9, 2016, when he attended a school identified as "School C." *Id.* at 13. For the 2016–2017 school year, D.R. was slated to attend a new school, identified as "School A." *Id.* "When Student entered School A, Student was nervous, but also excited." *Id.* However, upon starting at School A, D.R. "began falling behind academically and feeling overwhelmed." *Id.* Plaintiff received an independent neuropsychological evaluation, and the parties convened an IEP meeting in November 2016 to discuss the results; however, the meeting was postponed to be reconvened in January because the parties agreed "they did not have enough data to make a final eligibility determination." *Id.* at 14. Unfortunately, by winter break, D.R.'s situation had worsened; "[i]n January 2017, Student refused to enter the School A building and even refused to leave the house." *Id.* "To avoid truancy proceeding[s]," Rizio withdrew D.R. from School A; she began home schooling him on February 2, 2017. *Id.* at 10, 14. Because of the timing of the withdrawal, a new IEP was not developed for D.R., though the parties had agreed that he was still eligible for special education services. *Id.* at 10, 14–15.

Rizio continued to home school D.R. through the 2017–2018 school year. But Rizio "asserts that in September 2018 she contacted DCPS asking for educational placement options for Student." AR 1 at 10. Because what happened next is at the core of the dispute, the Court will quote the Hearing Officer's findings in full:

> On September 4, 2018, Petitioner contacted the DCPS Re-Engagement Coordinator in the DCPS Office of Equity and provided her a portion of Student's last IEP. The coordinator, after looking at what was sent, pointed out to Petitioner that the IEP did not suggest a smaller setting and asked if

---

2   While plaintiffs dispute the legal significance of certain facts, they do not challenge the factfinding of the Hearing Officer except where noted.

> Petitioner had any evidence why Student's neighborhood school could not accommodate Student. The coordinator asked for Petitioner's address so she could determine Student's neighborhood school.
>
> Petitioner later shared Student's 2016 evaluation. In an email sent to DCPS Office of Equity on September 14, 2018, Petitioner stated that she wanted to know if DCPS had a school that could support the findings for smaller class sizes supports for learning differences noted in Student's last evaluation that she provided.
>
> Petitioner had further communication thereafter with the DCPS Office of Equity by telephone. Typically the Office of Equity personnel meet in person with parents and students and there was an attempt to do so, but it did not happen with Petitioner. After reviewing the educational records and history of enrollment and speaking to Petitioner, the Director of Student Support in the DCPS Office of Equity determined that because Student was not enrolled as a DCPS student, Petitioner should reach out to her local DCPS school. He suggested Petitioner do so for the local school to make a determination of the level of restriction in educational setting that Student would require. There was no email response sent by DCPS in response to Petitioner's September 14, 2018, email.

*Id.* at 15–16.

Plaintiff Rizio proceeded to home school D.R. for the 2018–2019 school year. Rizio then "asserts that prior to the start of SY 2019-2020 she contacted Student's neighborhood DCPS school ("School B") and inquired about enrolling Student in that school." AR 1 at 10.

> In August 2019, prior to the start of SY 2019-2020, Petitioner reached out to Student's neighborhood DCPS school, School B, about re-enrolling Student in DCPS. She was told by the front desk staff that Student could be enrolled at any time and she could even come in person to enroll him. Petitioner was also given the name and contact information of the new Special Education Coordinator ("SEC") for the school at that time. She called the SEC and a left a message outlining her questions about what supports and/or services could be made available to Student for the upcoming school year. Petitioner did not ever go to School B to enroll Student in DCPS.
>
> Upon hearing about Petitioner's intent to re-enroll Student in a public school, Student became scared, anxious and overwhelmed. Prior to the first day of school for DCPS Student called a suicide hotline and threatened to harm [him]self as a result of the upcoming change in schooling. Student

4

> was admitted to Children's National Medical Center in Washington, D.C. for one week and thereafter was admitted to an out of state RTC.
>
> The School B SEC contacted Petitioner on August 28, 2019, during her trip to admit Student to the RTC. She explained the situation to the SEC and asked again what DCPS could offer based on Student's needs. The SEC stated she would look into Student's paperwork and follow up regarding potential options. Petitioner never received a response or follow up from the SEC. Student was discharged from the RTC on October 7, 2019. Student was to attend a special post RTC program, but was not able to do so. For Petitioner, Student attending School B was not an option. Petitioner continued to home school Student after Student's discharge from the RTC and she had no other contact with School B or DCPS.

*Id.* at 16.

### Hearing Officer's Decision

The Hearing Officer addressed two disputes: (1) "Whether DCPS denied Student a FAPE by failing to offer Student a FAPE as of September 6, 2018," AR 1 at 18; and (2) "Whether DCPS denied Student a FAPE by failing to comprehensively reevaluate Student and offer Student a FAPE as of August 2019." *Id.* at 21. But before addressing those issues, the Hearing Officer also made a preliminary decision: that home schooled students, similar to students in private schools, are entitled to "an offer of FAPE unless the parent makes clear his or her intent to keep the child" in home schooling. *Id.* at 20, citing *District of Columbia v. Vinyard*, 971 F. Supp. 2d 103 (D.D.C. 2013).

As to the September 2018 time frame, the Hearing Officer found that Rizio essentially abandoned her attempts and that her failure to "contact the neighborhood school to request a FAPE" reflected that she had chosen "instead to continue to home school" D.R. AR 1 at 21. The Hearing Officer added that this interpretation was supported not only by the lack of follow-up, but also by the submission of paperwork to continue home schooling. *Id.* In short, "Petitioner's failure to follow through with the direction offered her by the DCPS Office on Equity and instead her

5

choice to continue to home school Student made clear her intent to keep Student 'privately placed.'" *Id.*

As to the August 2019 offer of FAPE, the Hearing Officer found that Rizio had indeed contacted the neighborhood school as DCPS had suggested. AR 1 at 21. But, shortly after, D.R. was admitted to a Residential Treatment Center ("RTC"), and

> Petitioner did not contact DCPS following Student's discharge for the RTC to seek an offer of a FAPE for the remainder of SY 2019-2020. Instead, Petitioner made a determination on her own that a DCPS school would not be appropriate for Student and again registered with OSSE to home school Student for the remainder of that school year. Since then, it was not until Petitioner filed this due process complaint in September 2020, that she put DCPS been [sic] on notice that rather than continue to home school Student, she wants an offer of FAPE.

*Id.*

Finally, the Hearing Officer found that plaintiffs had not requested a triennial evaluation and that the District was therefore not at fault for not providing one. AR 1 at 23.

## STANDARD OF REVIEW

Under the IDEA, parties disputing an administrative decision may sue in either state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A). The court then "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *See id.* § 1415(i)(2)(B). "When no additional evidence is introduced in a civil suit seeking review of an H.O.D., a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005).

Because this is an appeal of an administrative decision, the court must give "due weight" to the proceedings below. *Bd. of Educ. of Henrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). The D.C. Circuit has provided guidance on the approach to be followed in an IDEA case:

> "[A] party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *See Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1989) ("*Kerkam I*"). But we have also made clear that given the district court's authority to "hear additional evidence at the request of a party" and "bas[e] its decision on the preponderance of the evidence," *see* 20 U.S.C. §§ 1415(i)(2)(B)(ii), (iii), IDEA "plainly suggest[s] less deference than is conventional" in administrative proceedings. *See Kerkam I,* 862 F.2d at 887. Moreover, a hearing decision "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent, D.C. Pub. Schs.,* 931 F.2d 84, 87 (D.C. Cir. 1991) ("*Kerkam II*") (internal quotation marks omitted).

*Reid*, 401 F.3d at 521.

## ANALYSIS

If a school system is obligated to offer a child a FAPE, the plan must include special education and related services that: (a) "have been provided at public expense, under public supervision and direction, and without charge"; (b) "meet the standards of the State educational agency"; (c) "include an appropriate preschool, elementary school, or secondary school education in the State involved"; and (d) "are provided in conformity with the individualized education program." 20 U.S.C. § 1401(9). The first question to be answered in this case is whether the Hearing Officer correctly determined that D.R. was entitled to an offer of a FAPE. The District contends that "home-schooled children are not afforded any protections under *Vinyard*, and, specifically, are not entitled to an offer of FAPE." Def.'s Mot. at 8; *see also* Pls.' Mot. at 9 ("The Hearing Officer's reliance on *Vinyard* was correct.").

7

In *Vinyard*, the court addressed the District's responsibilities towards students who are enrolled in private schools through parental choice, rather than pursuant to an IEP placement. 971 F. Supp. 2d 103. *Vinyard* concluded that "a local educational agency is required to (re)evaluate a child or revise an IEP at the parent's request even if the child is not presently enrolled in a public school in that locality." *Id.* at 113.

The Court starts by noting that both parties' attempts to parse the meaning of *Vinyard* are somewhat misguided, as *Vinyard* is not the actual source of the responsibility to provide an offer of FAPE to residents of the District; the IDEA itself is. The complete child find provision in the IDEA states that:

> All children with disabilities residing in the State, including children with disabilities who are homeless children or are wards of the State and children with disabilities attending private schools, regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services.

20 U.S.C. § 1412(a)(3)(A). The FAPE provision in the IDEA, 20 U.S.C. § 1412(a)(1)(A), states more simply that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21."

The District seems to focus on the child find provision[3] and argues that home schooled students are not entitled to an offer of FAPE because "[i]n accordance with D.C. Code § 5204.2,

---

3   The District does not cite to any provision in the statute, but simply quotes from *Vinyard*. Since the FAPE provision of the IDEA does not mention the parentally placed private school children at issue in *Vinyard*, but the child find provision does, defendant appears to be making its distinction based on the child find provision. *See* Def.'s Mot. at 10–11 (arguing that "the hearing officer's comparison of home-schooled students to children parentally placed in private schools is legally flawed" because "[i]n the District of Columbia, a home-schooled student is not considered to be a child parentally placed in a private school.").

DCPS does not consider home schooling to be a private school placement." Def.'s Mot. at 9. In support, the District quotes the Department of Education:

> Whether home-schooled children with disabilities are considered parentally placed private school children with disabilities is a matter left to state law. Children with disabilities in home-school or home day cares must be treated in the same way as other parentally placed private school children with disabilities for purposes of Part B of the Act only if the State recognizes home schools or home day cares as private elementary or secondary schools.

*Id.*, quoting 71 Fed. Reg. 46594.

But this formulation misses the point entirely; the District's responsibility is not, under the plain language of the FAPE provision, limited to public school students and parentally placed private school children.[4] Its responsibility is to "all children with disabilities residing in the State between the ages of 3 and 21." 20 U.S.C. § 1412(a)(1)(A). "All children" means all children. That group includes, but is not limited to, parentally placed private school children – so, as other courts in this district have persuasively concluded, it does not matter whether home schooled children fall into that group. *See Hawkins ex rel. D.C. v. District of Columbia*, 539 F. Supp. 2d 108, 116 (D.D.C. 2008) (finding that duties under the IDEA extended to a home schooled student who was "an undisputed resident of the District of Columbia who had been identified as a potential candidate for special education services. DCPS therefore denied D.C. a free appropriate public education" by declining to engage in the evaluation process); *see also District of Columbia*

---

4   Though it is not entirely clear why the child find provision would be relevant in this case, 20 U.S.C. § 1412(a)(3)(A) is similarly not limited to parentally placed private school children. The very first clause in the IDEA's child find provision says that the District must identify, locate, and evaluate "[a]ll children with disabilities residing in the State, *including*" students who are parentally placed at private schools. 20 U.S.C. § 1412(a)(3)(A) (emphasis added). The inclusion of that group of students does not imply the exclusion of others.

9

*v. Abramson*, 493 F. Supp. 2d 80, 84 (D.D.C. 2007) ("DCPS has a fundamental obligation to provide FAPE to a child with a disability residing in the District of Columbia.").

There does not seem to be any record dispute as to whether D.R. is a child with a disability residing in the District. So the Court will not disturb the Hearing Officer's determination with respect to D.R.'s eligibility for a FAPE, and it moves on to the two substantive questions: did the District fail to make an offer of FAPE in September 2018 and/or August 2019?

### September 2018

In September 2018, Rizio "contacted DCPS asking for educational placement options" for D.R. AR 1 at 10. She first "contacted the DCPS Re-Engagement Coordinator in the DCPS Office of Equity and provided her a portion of Student's last IEP." *Id.* at 15. The coordinator "asked if [Rizio] had any evidence why Student's neighborhood school could not accommodate Student." *Id.* Rizio then shared the 2016 evaluation and "stated that she wanted to know if DCPS had a school that could support the findings for smaller class sizes supports for learning differences noted in Student's last evaluation that she provided." *Id.* DCPS then suggested plaintiffs contact their local DCPS school "to make a determination of the level of restriction in educational setting that Student would require." *Id.* at 16. At this point, the process ground to a halt; plaintiff did not follow up with the local school, and the District did not make any additional efforts either. *See id.* at 21.

Plaintiffs argue that the Hearing Officer erred in allowing the District to create what essentially amounted to an enrollment requirement. *See* Pls.' Mot. at 12 (arguing that the Hearing Officer "ratified the Defendant requiring Ms. Rizio to perform such a futile act."). And it is clear in the text of the IDEA that a school district may not require a student to enroll in order to receive evaluations or a proposed placement. *See Woods v. Northport Pub. Sch.*, 487 F. App'x 968, 979

10

(6th Cir. 2012) ("It is residency, rather than enrollment, that triggers a district's IDEA obligations."); *see also District of Columbia v. Wolfire*, 10 F. Supp. 3d 89, 95 (D.D.C. 2014) ("there is no requirement that a child be currently enrolled in a public school to be entitled to a FAPE offer").

But regardless of why plaintiffs were asked to contact their local school, the more important point is that it is clear that the IDEA process was abandoned and plaintiff never received an offer of FAPE from the District.[5] Even though the District was aware of the issues that had prompted plaintiffs to withdraw D.R. from the local school, the student did not receive a new and updated IEP. Moreover, plaintiffs provided D.R.'s November 2016 neuropsychological evaluation to DCPS, but it was never incorporated into an actual IEP. The District never communicated any details about what services DCPS could provide, and the placement question was never resolved.

For its part, DCPS essentially admits that, as the parties' communication fizzled, it did not provide an offer of FAPE to plaintiff. *See* Def.'s Mot. at 10 (arguing that "the hearing officer correctly noted that 'had Plaintiff truly sought an offer of FAPE for D.R., she would have followed the direction provided to her by DCPS in September 2018 and contacted her DCPS neighborhood school[]'") (brackets in original omitted). But the District argues that this was justified by plaintiff's actions – because plaintiff did not pursue the path proposed by the District, and later

---

5   The Court does not necessarily agree with plaintiffs' suggestion that DCPS made IDEA services contingent upon enrollment, as there is evidence in the record that DCPS was attempting to ascertain the proper placement for D.R. It recommended that plaintiff contact the school "for the local school to make a determination of the level of restriction in educational setting that Student would require." AR 1 at 16. Thus, it appears that DCPS was of the view that an IEP team, rather than District staff in the Office on Equity, was best suited to continue the inquiry into what a FAPE would look like for D.R. But even if there was no enrollment requirement and plaintiffs bear some practical responsibility for the breakdown in the process, the obligation under the statute rests with the district, and there is no question that defendant did not offer an updated IEP.

filed paperwork to continue to home school D.R., the District was no longer "responsible for making FAPE available to the child." *Id.*; *see also* AR 1 at 21 ("Petitioner made no further contact with DCPS that school year. The Hearing Officer concludes that Petitioner's failure to follow through with the direction offered her by the DCPS Office on Equity . . . made clear her intent to keep Student 'privately placed.'").

In making this argument, the District conflates its responsibility to offer FAPE with its responsibility to provide the actual services. It is true that when the "parents 'make clear [their] intent to keep the child enrolled'" elsewhere, *Vinyard*, 971 F. Supp. 2d at 111 (edit in original), the District is not required to provide the services that would constitute a FAPE. However, it is also quite clear that the District is still required to make an *offer* of FAPE:

> [O]nce a . . . child is identified as a student with disabilities under the IDEA, the local educational agency will offer the child a FAPE, *i.e.*, an IEP, at which point the parents either (1) accept the offer of FAPE and enroll the child in a public school, at which point the local educational agency is obligated to make FAPE available to the child; or (2) the parents make clear their intent to keep the child enrolled [elsewhere], and the local educational agency is not required to make FAPE available to the child. By the Department of Education's own interpretation of the governing regulations, the *receipt* of services pursuant to an IEP is predicated on a child enrolling in a public school, but an *offer* of an IEP is not.

*Id.* (internal citations, brackets, and quotation marks omitted). In short, "the relevant inquiry is whether the parents expressed their intent to maintain the child's [home] school enrollment *after* the school district offers a FAPE." *Id.* at 114 (emphasis in original); *see also Hawkins*, 539 F. Supp. 2d at 115 (finding that the "failure to continue the eligibility process was an error," and that "DCPS was still obligated to 'offer FAPE by evaluating the student, convening an eligibility meeting, determining eligibility, developing an IEP if the student is eligible and determining and offering an appropriate placement'"), quoting *Abramson*, 493 F. Supp. 2d at 85.

The District cannot cite a parent's inaction to justify its failure to live up to its legal obligation to provide an offer of FAPE – the statute places these obligations on the District, not on parents. *See* 20 U.S.C. § 1412(a)(1)(A) (States must ensure that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21."); *see also id.* § 1412(a)(1)(B) (making FAPE available is an "obligation"). This Court finds that the Hearing Officer erred and that the District failed to meet its obligation to offer D.R. a FAPE in September 2018.

## August 2019

In August 2019, Rizio reached out to D.R.'s neighborhood school "about re-enrolling Student in DCPS." AR 1 at 16. Rizio also "called the SEC and left a message outlining her questions about what supports and/or services could be made available to Student for the upcoming school year." *Id.* At that point, the student "called a suicide hotline and threatened to harm [him]self as a result of the upcoming change in schooling." *Id.* Even while dealing with this crisis, Rizio "explained the situation to the SEC and asked again what DCPS could offer based on Student's needs." *Id.* "The SEC stated she would look into Student's paperwork and follow up regarding potential options. [But] Petitioner never received a response or follow up from the SEC." *Id.* Neither party initiated further contact at that time. *Id.*

D.R. was also entitled to a triennial reevaluation in October of 2019. *See* AR 1 at 23; *see also* 34 C.F.R. § 300.303(b)(2) ("A reevaluation . . . [m]ust occur at least once every 3 years, unless the parent and the public agency agree that a reevaluation is unnecessary."). However, the District points out that 34 C.F.R. § 300.303(a)(2) explicitly states that such a reevaluation must occur "[i]f the child's parent or teacher requests a reevaluation," and the Hearing Officer found that "there is no evidence that Petitioner sought revaluation of Student in SY 2019–2020." AR 1 at 23. Plaintiffs

have not pointed to any evidence in the record establishing that they did seek reevaluation. As a result, this Court cannot find that the Hearing Officer erred in determining that plaintiffs did not sustain their burden on the triennial evaluation issue.

However, this does not resolve the larger question of whether the District failed to offer D.R. the FAPE to which he was entitled in August 2019. Here, the Hearing Officer again placed the onus on the parent to "seek[] an offer of FAPE from the LEA." AR 1 at 23. This was a legal error, as already explained; the duty is with the District, and the District's responsibility was to offer D.R. a FAPE as a child with a disability residing within the District. *See* 20 U.S.C. § 1412(a)(1)(A).

But the Hearing Officer's conclusion that plaintiff failed to seek such an offer was also an improper factual conclusion based on the conversations described by the Hearing Officer. Plaintiff made clear that she wanted to know what the District could offer her son. *See* AR 1 at 16 (noting that "Petitioner reached out to Student's neighborhood DCPS school, School B, about re-enrolling Student in DCPS," "called the SEC and a left a message outlining her questions about what supports and/or services could be made available to Student for the upcoming school year," and, after D.R. was admitted to the hospital, "asked again what DCPS could offer based on Student's needs"). Despite these efforts, D.R. did not receive a new placement proposal. The District did not offer an IEP, even though D.R.'s last IEP was from June 2016 and did not incorporate his November 2016 neuropsychological evaluation. Worse, the District affirmatively represented that it would "look into Student's paperwork and follow up regarding potential options." AR 1 at 16. The District failed to do so, and this failure constituted a failure to offer FAPE to D.R.

**Remedies**

The D.C. Circuit has held that "an IDEA claim is viable only if those procedural violations affected the student's *substantive* rights." *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006) (emphasis in original). In this instance, the parties have not focused their briefing on the impact that the failure to offer D.R. a FAPE has had on his education, and the Hearing Officer did not reach the question because he determined that there was no predicate procedural violation. Similarly, the Hearing Officer did not reach the question of what compensatory education would be appropriate. As a result, this case will be remanded to the Hearing Officer to address, consistent with this opinion, what remedy, if any, is appropriate to compensate D.R. for the District's failure to offer him the FAPE to which he was entitled. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: January 6, 2022